IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN W. HOGAN

v.  :  Civil No. CCB-18-1448

CARROLL COUNTY, MARYLAND, *et al.*

## MEMORANDUM OPINION

A serious altercation transpired between Steven W. Hogan and officers of the Westminster Police Department on July 14, 2016, in the yard outside Mr. Hogan's Westminster home. Subsequently, Mr. Hogan filed suit in this court under 42 U.S.C. § 1983, naming Carroll County, Maryland, Officer Michael Beaumont, and Sergeant Radcliffe Darby as defendants. At issue here are the defendants' motions to dismiss or, in the alternative, for summary judgment on Mr. Hogan's Second Amendment claim (Count I), his equal protection claim (Count II), and his excessive use of force claim (Count III). *See* Officer Defendants' Mot. Dismiss / Summ. J., ECF 3; Carroll County's Mot. Dismiss / Summ. J., ECF 4. The parties agree that Count I and Count II should be dismissed, although they disagree over whether that dismissal should be with prejudice. The Fourth Amendment excessive force claim, by contrast, is argued on the merits. Under the *Heck* doctrine, Count I and Count II will be dismissed without prejudice.[1] Because the officer's actions under the circumstances do not amount to excessive force under the Fourth Amendment, Count III will be dismissed with prejudice.

---

[1] *See Heck v. Humphrey*, 512 U.S. 477 (1994). Count I and Count II challenge the constitutionality of Md. Code Pub. Safety § 5-133. On February 20, 2018, Mr. Hogan was convicted under Md. Code Pub. Safety § 5-133 of unlawful possession of a firearm and that conviction has not been set aside. (Compl. ¶ 9.) He remains in custody on that offense. (Compl. ¶ 40.)

1

## BACKGROUND

While certain aspects of what occurred are very much in dispute, the parties agree on the basic points of how the events of July 14, 2016, unfolded. The month prior, Mr. Hogan had been convicted of a state criminal offense rendering it unlawful for him to possess a firearm. (Compl. ¶ 15.) Mr. Hogan called the Westminster Police Department on the day in question, reporting a broken door. (Compl. ¶ 19.) Sergeant Lambert responded to the call. There ensued an encounter between Mr. Hogan and Sergeant Lambert at Mr. Hogan's doorway in which Mr. Hogan displayed, but did not hand over, a small silver Derringer firearm in his pocket.[2] (Compl. ¶ 20; Officer Defs' Mot. to Dismiss / Summ. J, Ex. A at p. 2, ECF No. 3.) Sergeant Lambert called for backup, and Officer Beaumont and Sergeant Darby, who both knew Mr. Hogan and of his prior conviction, responded. (Compl. ¶ 22.) The radio call specified that Mr. Hogan was armed with a handgun. (Pl's Opp'n Defs' Mot. Dismiss / Summ. J., Ex. 2, ECF No. 7.) While the play-by-play accounts of what happened next markedly diverge, a standoff of sorts came about in which all agree that words were exchanged, Mr. Hogan retreated into his home (perhaps more than once), retained control over the Derringer, and Sergeant Darby and Officer Beaumont each deployed a taser against Mr. Hogan and used force to effectuate his arrest. (Compl. ¶ 31-35.) Mr. Hogan was later convicted of unlawful possession of a firearm in violation of Md. Code of Pub. Safety § 5-133 but was acquitted of resisting arrest. (Pl's Opp'n Defs' Mot. Dismiss / Summ. J. at pp. 2-3, ECF No. 7.) He was sentenced to five years in prison, the statute's mandatory minimum. (Compl. ¶ 40.)

---

[2] Mr. Hogan alleges that he displayed the firearm in an attempt to relinquish control over the Derringer to Sergeant Lambert, while the latter maintains that when he attempted to grab the gun, Mr. Hogan exclaimed, "Hell No" and slammed the door.

2

## ANALYSIS

### I. Standard of Review

The defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

Here, the plaintiffs had adequate notice that the defendants' motions might be treated as those for summary judgment. The motions' alternative captions and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Moreover, the plaintiffs referred to the motions in their opposition brief as those for summary judgment and submitted additional documentary exhibits. If the plaintiffs had thought they needed additional evidence to oppose

3

summary judgment, Rule 56(d), which they have not invoked, afforded them the opportunity to seek further discovery through an affidavit. *See* Fed. R. Civ. P. 56(d); *see also Greater Baltimore*, 721 F.3d at 281 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). Therefore, the court will consider the affidavits and additional materials submitted by the parties and will treat the motions of the defendants as motions for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding

to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## II. Discussion

### A. *Heck* Doctrine

Count I and Count II will be dismissed without prejudice. *Heck* currently bars Mr. Hogan's claims, but if his conviction should somehow be set aside in the future, he may be permitted to file a new action. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (stating that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."). The court expresses no opinion on the merits, if any, of those future claims.

### B. Excessive Force

Qualified immunity is an affirmative defense to liability under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Qualified immunity shields government officials from liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). Defendants bear the burden of proving their entitlement to qualified immunity. *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014). To prevail on a qualified immunity defense, a government official must demonstrate either (1) that the facts, construed in the plaintiff's favor, do not constitute a violation of the plaintiff's constitutional rights, or (2) that the right infringed upon was not clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson*, 555 U.S. at 231-33.

The threshold inquiry is whether the facts, viewed in the light most favorable to the plaintiff, show that the officers' conduct violated a constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). The Fourth Amendment prohibits police officers from exercising excessive or unreasonable force. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine whether an officer's use of force amounts to excessive force under the Fourth Amendment, courts employ the objective reasonableness test, weighing "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest to attempting to evade arrest by flight." *Id.* at 396. "To properly consider the reasonableness of the force employed we must 'view it in full context, with an eye toward the proportionality of the force in light of all the circumstances.'" *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2005)).

Sergeant Darby and Officer Beaumont's use of nondeadly force against Mr. Hogan was not excessive or unreasonable. It is undisputed that Mr. Hogan called the police about a broken door and that, when officers responded, they found not a broken door but instead a man unlawfully wielding a firearm. The plaintiff asserts that, having discovered the Derringer, and knowing that his possession was unlawful, he reported the broken door so that police would respond, and so

that he could hand over possession of the firearm without being arrested. (Compl. ¶ 19.) Even if Mr. Hogan's version of events, supported by no evidence, is true, the fact remains that Mr. Hogan had multiple opportunities, first with Sergeant Lambert, and then when Sergeant Darby and Mr. Hogan conversed prior to the first use of a taser, to relinquish the gun. (*See* Pl's Resp. Defs' Mot. Dismiss / Summ. J. at pp. 5-6, ECF 7.) Given Mr. Hogan's pretextual call to police, his ongoing possession of the gun, and the fact that all parties knew at the time that his possession was unlawful, Sergeant Darby's initial use of a taser (which failed), and Officer Beaumont's second use of the taser were objectively reasonable steps to secure officer safety and were proportional to the threat presented by Mr. Hogan, who at all times appeared to remain armed. There is no fact in dispute that is material to the objective reasonableness inquiry.

While this finding is sufficient to sustain the defendants' motion for summary judgment, it is worth noting for the record that the exhibits submitted by both parties portray a much more dire constellation of facts. Sergeant Lambert reports that upon his arrival Mr. Hogan was extremely agitated, that he was angry at Sergeant Darby for reasons related to a prior case, that Mr. Hogan affirmatively refused to relinquish the Derringer, that he made numerous statements about wanting the police to shoot him, that he was frantically retreating and reemerging from his front door, and that he pulled out one of the first taser probes, and repeatedly disobeyed officer instructions. (Officer Defs' Mot. Dismiss / Summ. J. Ex. A, ECF 3.) This account is ratified by several other police reports submitted by officers at the scene. (Officer Defs' Mot. Dismiss / Summ. J. Ex. B-F, ECF 3.) This textured factual portrait, derived from the exhibits submitted by both the plaintiff and the defendants, is countered only by Mr. Hogan's unsupported and conclusory assertion that the officers harbored ill-will toward him and tased him without warning, an assertion that is itself belied by Mr. Hogan's decision to initiate the encounter.

All the evidence in the present record thus supports the conclusion that it was objectively reasonable for Sergeant Darby and Officer Beaumont to each deploy their tasers in order to effectuate Mr. Hogan's arrest. This conclusion accords with the Fourth Circuit's analysis in *Meyers v. Baltimore County, Md.*, 713 F.3d 723, 733-34 (4th Cir. 2013), where an officer's initial uses of a taser against an agitated man wielding a baseball bat were found to be objectively reasonable, although subsequent deployments of the taser after the man was subdued were not. The present facts are readily distinguishable from those in *Armstrong v. Village of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016), where the individual tased was unarmed and stationary, and other cases invoked by the plaintiff involving the conspicuously disproportionate use of force. *See, e.g., Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666-67 (10th Cir. 2010) (taser used against unarmed woman who did not pose a threat to officer safety); *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) (Ruby-Ridge FBI sniper's use of deadly force from afar).[3]

Because Mr. Hogan has not established a violation of his constitutional rights, the defendant officers are entitled to judgment in their favor. Similarly, the absence of a constitutional violation precludes Mr. Hogan's § 1983 claims against Carroll County.

A separate order follows.

__12/7/18__
Date

*Catherine C. Blake*
Catherine C. Blake
United States District Judge

---

[3] Even if there were a Fourth Amendment violation here, the right at issue was not clearly established at the time of the altercation. While *Armstrong* put officers on notice that suspects have a Fourth Amendment right "not to be subjected to tasing while offering stationary and non-violent resistance to a lawful seizure," *Armstrong*, 810 F.3d at 907, it is not apparent in light of pre-existing law in the Fourth Circuit that a person advancing toward the police, unlawfully wielding a gun and refusing to comply with instructions, has a right not to be tased. *See Wilson v. Prince George's Cty., Maryland*, 893 F.3d 213, 220-22 (4th Cir. 2018). This provides an alternative and independent basis for granting summary judgment.